# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERMAN McCOY, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION |
| CITY OF PHILADELPHIA, *et al.,* | NO. 21-1458 |
| *Defendants.* | LEAD CASE |
| JAMAAL SIMMONS, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION |
| CITY OF PHILADELPHIA, *et al.,* | NO. 19-1648 |
| *Defendants.* | |
| JAMES FRAZIER, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION |
| CITY OF PHILADELPHIA, *et al.,* | NO. 19-1692 |
| *Defendants.* | |
| DARNELL POWELL, *et al.,* | |
| *Plaintiffs,* | |
| v. | CIVIL ACTION |
| CITY OF PHILADELPHIA, *et al.,* | NO. 19-2155 |
| *Defendants.* | |

1

| | |
|---|---|
| DONTE HILL, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 19-2156 |
| CITY OF PHILADELPHIA, *et al.*, | |
| *Defendants.* | |
| ARKEL GARCIA, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION |
| CITY OF PHILADELPHIA, *et al.*, | NO. 21-2884 |
| *Defendants.* | |
| RAFIQ DIXON, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION |
| CITY OF PHILADELPHIA, *et al.*, | NO. 23-1650 |
| *Defendants.* | |
| MARVIN HILL, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION |
| CITY OF PHILADELPHIA, *et al.*, | NO. 23-1002 |
| *Defendants.* | |

**MEMORANDUM ORDER**

This 20th day of June 2023, upon consideration of the City of Philadelphia's Motion for Reconsideration (ECF 40), Plaintiffs' Response in opposition (ECF 41), and the City's Reply (ECF 43) it is hereby **ORDERED** that the City's Motion (ECF 40) is **DENIED**.

I

On May 11, 2023, after an in-court conference with all parties and after reviewing the parties' submissions on the scope of discovery related to Plaintiffs' *Monell* claims, the Court, in its discretion and consistent with Rules 1 and 26(b)(1) of the Federal Rules of Civil Procedure, entered its Scheduling Order outlining the scope of *Monell* discovery in these consolidated cases, the facts of which are well known to all parties.

A court should only grant a motion for reconsideration if: "(1) there is newly available evidence; (2) an intervening change in the controlling law; or (3) there is a need to correct a clear error of law or prevent manifest injustice." *Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 246 F. Supp. 2d 446, 446 (E.D. Pa. 2003) (citing *Drake v. Steamfitters Local Union No. 420,* No. 97–585, 1998 WL 564486, *2–3 (E.D. Pa. Sept. 3, 1998)). The City claims, for two reasons, that reconsideration is necessary to prevent manifest injustice. First, the City says it cannot identify all Homicide Unit cases in which Detective Nordo was involved or which involve the types of violations enumerated in paragraph 4(e)(i)1–7 of the Court's Order. (Mot. for Reconsideration 5–6, ECF 39 in Lead Case). Second, it claims the Order is overly broad and burdensome. (*Id*. at 7.) The Court addresses these arguments in reverse order.

3

A

The City contends paragraph 4(a)(ii) of the Scheduling Order "potentially implicates hundreds of cases, many of which would be irrelevant to the issues presented in this litigation." (Mot. for Reconsideration 7, ECF 39 in Lead Case.)  Before issuing the May 11 Order, the Court carefully considered the City's proposed scope of discovery but found it to be too restrictive and not "proportional to the needs of the case" given "the importance of discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(1).  In these cases, Plaintiffs contend Detective Nordo committed various constitutional violations in the course of investigations and bring *Monell* claims alleging that the City's unconstitutional customs and its failure to train, supervise and discipline its officers caused Plaintiffs' injuries.

Successful *Monell* claims can proceed in two ways:  a plaintiff may establish that a municipality maintained an unconstitutional policy or custom that caused the plaintiff's injuries, or that the injuries were caused by a failure or inadequacy on the part of the municipality.  *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019)).  In order to establish an unconstitutional custom, a plaintiff must show "that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  *Est. of Roman,* 914 F.3d at 798 (citations omitted).  To proceed under a failure or inadequacy theory—such as failure to train or supervise—a plaintiff must demonstrate deliberate indifference on the part of the municipality by showing that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of

employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest*, 930 F.3d at 106. Usually, "a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (citation omitted).

Both avenues of establishing *Monell* liability have "equally demanding requirement[s]," *Forrest*, 930 F.3d at 106, and in order to prove their claims, Plaintiffs must have the opportunity to establish a pattern or practice of conduct on the part of the City that evidences deliberate indifference. The Court weighed the "burden or expense of the proposed discovery" against "its likely benefit" and its "importance" to the issues at hand and determined "Homicide Unit cases in which Nordo was involved or which involve allegations of the types of constitutional violations listed in paragraph 4(e)(i)1–7" encompassed information that is highly "relevant" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see, e.g.*, *Prince v. Kato*, No. 18 C 2952, 2020 WL 1874099, at *2 (N.D. Ill. Apr. 15, 2020) ("The Court finds that the homicide files are relevant to Plaintiff's *Monell* theories. . . . It is important to recognize that Plaintiff is attempting to prove a widespread policy or custom of significant misconduct by police officers in homicide investigations.") For Plaintiffs to establish that either a custom or a failure to train, supervise or discipline exists within the Homicide Unit, Plaintiffs necessarily must have access to Homicide Unit files for cases in which Nordo was involved or that deal with the types of allegations enumerated in paragraph 4(e)(i)1–7.

B

The City's primary argument pertains to the feasibility of locating these relevant files. The City contends it has no mechanism for identifying Homicide Unit cases "in which Nordo was involved" because the Police Department only tracks the lead detective assigned to each investigation. (Mot. for Reconsideration 5–6, ECF 39 in Lead Case). It also claims it cannot readily identify cases which involve the types of violations listed in paragraph 4(e)(i)1–7. (*Id*. at 6.) With no electronic categorization or tracking system in place, the City claims it will have to review 5,723 homicide files by hand to locate the relevant files. (*Id*. at 6 n.3; Def.'s Reply 4, ECF 43 in Lead Case.)

The City's difficulty in locating the discoverable files does not rise to the level of manifest injustice and does not warrant reconsideration of the Court's Order. In *Monell* cases discovery is often broad in scope and burdensome on municipalities. *See Prince*, 2020 WL 1874099, at *2 ("*Monell* discovery is inherently time-consuming and voluminous, [but] the Court should also not excessively limit discovery such that it affects Plaintiff's ability to prove his claim at trial."); *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 6568242, at *7 (N.D. Ill. Dec. 17, 2012) ("Due to the fact that *Monell* claims implicate a potentially large number of events taking place in an organization over a period of time, they naturally, and necessarily require extensive and often burdensome discovery.") In many cases discovery still requires combing through non-electronic documents. Plaintiffs should not be precluded from properly developing their claims merely because the City purportedly does not possess a streamlined process to review its files and determine which fall within the Scheduling Order's scope. Discovery in these cases may be a substantial undertaking for the City, but to grant the City's

motion would mean litigants could shield relevant documents from discovery on the conclusory assertion that a party does not have an efficient way to find them.

     Discovery in a case like this requires courts, in their discretion and consistent with the Rules of Civil Procedure, to strike an appropriate balance.  The Court believes it has done so here.  To the extent the City is required to manually review a large number of documents, it can dedicate additional personnel and resources to the task.  And if necessary, with the City making the proper showing, the Court will be amenable to considering a request for a reasonable extension to the time periods set out in its Order.

                                        BY THE COURT:

                                        ***/s/ Gerald J. Pappert***
                                        GERALD J. PAPPERT, J.